May it please the Court, good morning. My name is Linda Ziskin, and I'm the attorney for the appellant Craig Tobler. Generally, when I appear before this Court, I'm arguing to you about the merits of a case, as I have before Judge Fischer several times. I represent disabled people. Today, I'm not representing Mr. Tobler so much as I'm representing myself. I already got an excellent result for Mr. Tobler. I'm here today to discuss money, which I wish I didn't have to. And it may seem to the Court like more and more of these substantial justification cases are coming before you, and you're right. They are, and there is a reason for that. Yesterday, I filed a 28J letter, and, Judge Fischer, you had a recent case in Meyer v. Colvin, which you noted that in the Thangahara case, I always have trouble with that, Thangahara case, the Court described the case as having to be decidedly unusual in order to merit a finding of substantial justification in the face of a lack of probative relevant evidence that would support a finding that there was substantial evidence. When cases are reversed, there's a presumption that perhaps not, it was perhaps not substantially justified. So interestingly, what we have in this case is a question also of whether this is a decidedly unusual case. And I posit to you that it's not. And to support that preposition or proposition, in the supplemental excerpts of record which opposing counsel filed, she also included at the end her brief, in which at that time she was also arguing about the reasonableness of my fees, which is an issue we don't have to reach today. At the bottom of page 285, she answers the question of whether this case today, Tobler v. Hasker, is a decidedly unusual case. What she wrote was, there is nothing unusual or novel about this case, in her own words. So I leave it to you that this case follows squarely on the heels of Meyer v. Colvin. This is not a decidedly unusual case. Here what we have, too, is an ALJ who violated the law, and remembering that substantial justification can only be found when both law and fact are substantially justified. Here we have law. Kagan. Are you focusing on the agency's decision or the government's defense of it, or both? I'm focusing on the district court judge, Judge Reed's denial of the AIGA fees. Oh, I understand that. But I assume that this is a basically de novo view. Is it, by the way? Well, yeah. What he did was he remanded it. No, I'm asking you whether our review – what's our review? No, your review today, Your Honor, is on the substantial justification question only. But is it – what is our standard of review of the district court? Your standard of review of the district court is de novo. Okay. But in this case, now you're looking for abuse of discretion of whether the district court's decision was an abuse of discretion to deny AIGA fees to the district court. Now you're trying to tell me two different things. You said it was de novo, and then you said it was abuse of discretion. It's always de novo in a Social Security case when this Court sees a case, and that's Stone v. Heffernan. I'm talking about the fees issue. The fees issue, it is abuse of discretion, Your Honor. Okay. Yes. I'm sorry if I misspoke. The other – What's the abuse of discretion here? The abuse of discretion is that Judge Reed, the Honorable Judge Reed, who is the district court judge, his abuse of discretion was in not providing the specific articulation of the reasons for denying the AIGA fees, as you specified in Meyer. Okay. There are two components to reasonably justified. One is the underlying agency action, and the other is the litigation position. Right. And my position is that the district court addressed the underlying agency action. No. No. Okay. So that's an error of law, right? That's an error of law. That would be an abuse of discretion. That would be an abuse of discretion. So what's the point? The patent abuse of discretion here is that the ALJ completely ignored the law. Right. That's the underlying. That's the underlying. And then the Commissioner compounded the problem by defending it. Exactly. So that is my position. Do you want to save the rest of your time? Okay. But one other thing I would like to bring to the Court's attention is just the public policy reasons that we're here today. The Equal Access to Justice Act contains in its name the words that we need to live by, equal access to justice. If the Court's docket gets very crowded. Can I just go back to what you said? The order actually says that while plaintiff prevailed on the issue of lay witness testimony, the remainder of the ALJ's conclusions were affirmed. And I don't actually see any discussion in this very short order about the government's position on the court. If you're referring to the order on the field. In Judge Reed's order, page 2 of his order, he almost contradicts himself here because he first says that the error of law in ignoring the lay witness testimony has a bearing on credibility. So now we're remanding for two issues. And then he says the error of case. I'm talking about the fees order. Can we just stay in one place now, okay? That is what I'm looking at. All right. Go ahead. Sorry, Judge Berzant. He contradicts himself in the order denying fees. On page 2 of his order, he says that the entire case is tainted, the entire disability determination is tainted because of the one error in ignoring the lay witness testimony, which then extends to the credibility question, which then extends to the entire finding in the entire case. If that is not an error of law, I don't know what is. And for that reason, the error of law alone, the government's position cannot be substantially justified under Pierce v. Underwood. The other policy issue I think that we need to remember is what the purpose of the AJA is. And in Ashter v. Ratliff, which I cited from in my 28J letter, both Justices Ginsburg and Sotomayor were very concerned about this. There are many attorneys in my position that are solo practitioners and small firm lawyers who are going to stop taking these cases. Not only is your docket going to become increasingly crowded with these cases when the government fights every case that they lose and will be here quite often, but it's going to make it so that these indigent defendants, these indigent clients cannot find representation if their lawyers are not going to get paid. It's just a simple matter of economics. So we're all concerned about that, and that's why I'm standing before you today. I welcome any further questions, and if not, I would like to reserve my time. Kennedy. I wonder about the effect that all that happened in the district court as it goes back to the ALJ, as I understand it. And what if the ALJ – I wonder, then, can you address the harmless error that the district court might have made? In other words, the whole – come out to the same result. It could, but we don't know that. The government argued that it was harmless error. It was the same argument they made in the Stout v. Commissioner case. And there, this Court soundly rejected that. It's not harmless. It's not harmless error when you ignore evidence, lay witness evidence. It's the same issue with Stout. And when it goes back to the ALJ, that ALJ must give his reasoning this time. And I don't know if he did or not. It's still pending. But if he doesn't, we'll be back. If he commits the same error time and time again, which the ALJs are wont to do, we will catch them on that and hold them to their proof. They must articulate their reasoning. They cannot ignore probative evidence like this. In this case, and opposing counsel will undoubtedly argue the facts. Again, I'm arguing the law. But in this case, the facts are that Mrs. Tobler, his wife of 23 years, told the court that the fee law is clear, that if one gets a remand, that's a success for a Social Security Act purposes. Yes. That gives an award of each of fees if all the parameters are met. Even if it turns out that the fee was a name. Yes. And that's why we do these cases, because we get money now if benefits are won for the client and each of fees were denied. I am still a little baffled by what I was asking about before. It doesn't appear to me that the district court's determination was based on the government's litigation position as opposed to the ALJ. Was it or wasn't it? The judge did not reach that, You're right. Did not reach what? Did not reach the question of whether the government's litigation position was sufficient to deny it. Right. It was only relying as to the adverse problem, but it's not the problem that you identified before. It's not that they were only basing it on the government's litigating position. If I'm understanding you correctly, Judge Berzon, Judge Reed did not reach the issue of whether or not the government was justified in defending this case. The reason he didn't have to. Right. It only looked at the ALJ. Yeah, exactly. And the reason he didn't have to, he didn't reach that and he also didn't reach reasonableness, was because he decided that the ALJ's position was substantially justified. Therefore, he didn't need to take that next step to see if the government's position was substantially justified. To cut. I'm sorry. Go ahead. Go ahead. What do you do, then, with the other argument they make? The magistrate judge said, well, yeah, I agree with the analysis done by the ALJ. In other words, it's not that far off, maybe. That's their argument, I guess. At least one judicial officer determined that it was. Right. He was reversed. And my opponent has argued that that constitutes a string of successes. While one case is not a string, one judge doesn't make a series. The magistrate judge was overruled. He was incorrect. And that happens. And it's actually kind of an unusual result for me to file objections to the finding of a recommendation and then have the district court judge agree with me that the magistrate judge was incorrect as a matter of law in his determination that it was harmless error for the ALJ to ignore all this evidence. He was incorrect. He ignored the law as well, which is an abuse of discretion. All right. Thank you. I won't give you a minute on rebuttal. Thank you. But you did reserve time. I guess I'll just do my questions. May it please the Court. Good morning, Your Honor. Good morning, Ms. Hitzken. My name is Elizabeth Berry. I'm here on behalf of Carolyn Colvin, the defendant and the acting commissioner of the Social Security Administration. I'd like to begin by first addressing some of the points raised by Ms. Hitzken. Can you get the mic closer to you or speak up? I'd like to first address some of the remarks made by Ms. Hitzken and start with the EJOR order from April 16, 2012. It is a brief order, and it's typical in these cases that the orders tend to be pretty brief, but what counts is what's in the order. And at the top of page 2, the order states, the first full sentence, defendant argues that the plaintiff's wife's lay witness report concerned a period after the relevant disability period in this case. That is the defendant's litigation position, and the district court judge addressed it here. The next sentence, plaintiff's employer's lay witness report did not give specific times and dates and therefore may also be irrelevant. And so in these sentences, the district court judge is addressing not only the ALJ's decision in which the ALJ didn't discuss these lay witness reports. Where did the ALJ address and give reasons for rejecting the lay witness testimony? Well, the law of Where did the ALJ address and give reasons for rejecting? Where in the record of the ALJ? Did he say it was irrelevant? Did he say it was incompetent? The ALJ did not state that. The ALJ. He didn't say anything about why he found the lay witness testimony nonprobative. He didn't. The ALJ has no duty and obligation to discuss evidence that's not probative. And this Court in Molina, which was decided after the merits order in this case, reached a conclusion that's consistent with that position, that where an ALJ provides legitimate reasons for rejecting the statements of a claimant, and a third-party witness makes statements that are duplicative or corroborative of that, of the claimant's statements, the ALJ's decision should not be remanded simply because the ALJ didn't provide, didn't reject every lay witness statement. That's from Molina. Sotomayor, isn't what the district court ultimately ruled in the fees is, if the key sentence is the last one, while Plainton prevailed on the issue of lay witness testimony, the remainder of the ALJ's conclusions were affirmed. It seems to me that what this holding is, is not that the particular determination with regard to the lay witness report was substantially justified, but that it was the rest of the case was affirmed, and in that sense was substantially justified. You don't understand if that's what he was saying? Well, I think what happened at the – with the magistrate's order and the district court's order is that they affirmed the ALJ's findings in every regard, except for the lay witness. Right. All right. So is that substantially justified because they affirmed most of it, but they remanded on one issue? I think that you're conflating the two standards, because at the merits stage, the standard is substantial evidence. I understand that. I'm asking you whether your understanding of the substantial justification standard is that if, on review, the district court affirms most of the opinion but remands as to one point, that that is a substantially justified opinion. No, absolutely not. Isn't that what the district court is saying here? All right. And isn't that exactly what the district court was saying? I don't think so. I don't read it that way. What I – how I read it is that the court is saying the defendant argued that the lay witness testimony, which was well outside the relevant disability period by decades and by years, decades before and decades after, was irrelevant. And here the district court never says that the government's position was substantially justified as to the lay witness report. Where does it say that? It says in the second-to-last sentence, this case was remanded because of the heightened harmless error standard. In the sentence before, it states that, yes, the government might have been right. This information might have been irrelevant. This evidence. It might have been, but the whole problem was that it wasn't discussed. That doesn't have to do with whether the remand was substantially justified. Whether the problem, i.e., not having dealt with the issue, was substantially justified. It just has to do with the fact that, as Judge Quist said, they may end up – the government may end up prevailing in the end, but that's not a test here. Well, let me address your other question. So the – this reading, it states that the government argued that the evidence was irrelevant in the district court on the merits. The courts, both the magistrate judge and the district court, rejected that view. And then the government, in the alternative, argued that if it was an error, it was harmless. The two judges, the two federal judges, looking at the same evidence and the same lost doubt, reached contrary conclusions. The magistrate judge found that there was an error, but it was harmless. And the district court judge found there was an error, and it was harmful, and remanded the case. Here, this – each is a totally different matter. They're looking at – looking at the case through a different lens. They're looking at, you know, was the ALJ's decision reasonable? Was the litigation position of the government reasonable? And here it's saying, well, this ALJ was looking at lay witness evidence that was years outside the relevant period. This – Mr. Tolbert filed an application in 2006. He was alleging disability in 1999. And 1999 was the relevant period that this judge was tasked with. But you agree that we're not reviewing this de novo, right? No. This is an abuse of discretion. Right. So the question is, what did the district judge decide? And the district judge decided that it determined that in two parts, because there was a two-part argument. The defense – the government argued that it was irrelevant, and then the alternative that it was harmless. And did the district judge say that any of that was substantially justified? No, he didn't. Well, the district – what he says, though, is that – that the – that he – that he discusses the dates, and then he said, therefore, this may also be irrelevant to the ALJ. Yes. Yes, it might. But that doesn't have to do with whether the remand was – whether the opinion was substantially justified as it stood. Well, I think what the – what the district judge is saying is that – that it was reasonable. It was a reasonable – a reasonable argument that the relevant evidence – and this is very similar to Campbell, a case – the last published case by this court decided after Meyer, where the ALJ was also tasked with looking at a very remote disability period, looking at evidence that's ambiguous, conflicting, and reaching a determination. The court ruled in that case – and it was a remand for payment of benefits, unlike this case was a remand for further procedure – but the court ruled in that case, the government can be wrong, but it can still be reasonable. And – and the facts here are very similar, where the ALJ is looking at a very remote disability period, having to synthesize evidence. It's – and – and what's interesting, too, about this case is that, in addition to Campbell being very similar in facts, is that there are two – there are two Federal judges looking at these same facts, the same law, and reaching opposite conclusions. Under Pierce, which is the highest judicial interpretation of the Aegis statute and sets forth in great detail the standard, says that if – if the substantial justification standard is met where there is a genuine dispute between reasonable people, and we have two Federal judges reaching opposite conclusions. And another thing that makes this case particularly interesting is that after everything is said and done, this court decided Molina, and Molina sanctioned, really, the government's argument at the merits. Unlike what – what counsel said – Was Molina? Excuse me. Is Molina an Aegis case? Molina considers several issues, one of which is lay witness evidence in the context of error. And it says – Was it an Aegis case? It's not an Aegis case, but it's a rather – Could you turn to Meyer, then, and address what we said in Meyer on the government's underlying position was not substantially justified. We need not address whether the government's litigation position was justified. But, you see, Molina shows that the ALJ's actions were harmless. That – and had this case been decided, had the district court judge had the benefit of Molina, he very likely would have reached an alternate decision. I thought the point in Molina was that there was no reason to discuss the lay witness testimony because the same concerns that discredited the claim had discredited the lay witness. Yes. But here that's not true. That's exactly what happened here. I understand what happened here is that the possible problem with the lay witness testimonies has to do with its timing. That was the first argument. There was an alternate argument that we made. All right. It's an alternate argument. And we conceded. We conceded. But the reason why it was determined to be the main argument was that it was out of time, essentially. That's right. And the court – and both judges rejected that argument by the government. But the government's still saying that's a reasonable position. In the alternative – But it's not parallel to Molina. Well, the second part is, though. Because in the second part – But what – The second part, there was an error. The government said, okay, if there's an error, it was a harmless error. One judge agreed with us. One judge didn't. After the cases decided, this Court decided Molina – But I thought the reason you thought it was harmless was because it was from the wrong time period. No. The reason we thought it was – no, it's a totally different argument. The reason we thought it was harmless is because it was duplicative and corroborative of the claimant's statements. And under Molina, that is a harmless error. And Molina decided that issue because the district courts were reading – reaching different conclusions, as happened in this case. Okay. You've reached your time up. Thank you very much. Thank you. And if I could just say one last point. This Court asked in December for the supplemental excerpts of records to be filed electronically. At that time, I was under a misunderstanding that we didn't file a supplemental excerpt of record. We did, in fact, do so. If the Court would find it helpful for us to submit that now electronically and with its permission, I can do so. All right. That would have been done probably before it was assigned to the panel, so I actually don't know anything about that. But thank you. We'll give you one minute in rebuttal. Thank you very much. Quickly, I'd like to comment on Campbell. This case is nothing like Campbell. Mind about Molina. Well, Molina is nothing like Stout. In Stout, it's harmless error to ignore the lay witness testimony. Molina is more in tune with the government's position that if it's duplicative and extraneous, it doesn't need to be considered. And that's also in tune with Valentine. However, Campbell is a substantial justification case. It is more relevant than talking about Molina here. And I think we need to make that distinction. The reason Campbell is distinguished from Meyer and the Campbell Court said it, it's because here in Campbell, the ALJ did her job. She had to work real hard at extrapolating the facts because they were talking about disability that had occurred in the past. She worked hard. She did what she was supposed to do. She provided reasoning. Here, we have no reasoning. That's the harmful error. Thank you very much. Thank you. Thank you for your time. The case of Topler v. Colford is submitted. We'll go on to Hughes v. Chanel.
judges: Quist, Fisher, Berzon